

FILED

FEB 25 2025

Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| **JORDAN TALLEY-SMITH**<br><br>**Plaintiff**<br><br>v.<br><br>**Indiana Department of Workforce Development, Review Board, and Indiana Court of Appeals,**<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CASE NO.   *2:25cv91* |

---

### Federal Complaint for Systemic Due Process Violations, Economic Suppression, and Judicial Misconduct in the Indiana Unemployment Benefits Appeal Process

---

### INTRODUCTION

1. **Plaintiff, Jordan C. Smith, Agent on behalf of JORDAN TALLEY-SMITH**, brings this action against the **Indiana Department of Workforce Development (DWD), the Review Board, and the Indiana Court of Appeals (ICA)**, asserting **claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 12 U.S.C. § 5567, and 26 U.S.C. § 3304(a)(5)**. This lawsuit challenges **Defendants' systemic procedural sabotage, economic suppression, racial discrimination, judicial overreach, and retaliatory misconduct—** all of which culminated in the wrongful **denial of legally entitled unemployment benefits.**

2. **Defendants, acting under color of state law, engaged in a concerted scheme to obstruct Plaintiff's access to benefits** by unlawfully ignoring **final ALJ rulings, issuing fraudulent determinations, and manipulating appellate review processes** to **manufacture procedural barriers and impose financial hardship.** Despite multiple rulings confirming Plaintiff's eligibility for benefits, Defendants **fabricated pretextual denials**, refused to comply with established legal precedent, and engaged in coordinated actions to **delay and ultimately deprive Plaintiff of unemployment compensation.**

3. **This action arises from Plaintiff's wrongful termination from Webb Ford on May 21, 2024, and his subsequent application for unemployment benefits.** Defendants **not only refused to process benefits despite multiple favorable rulings—ALJ Botkin's decision on September 4, 2024** (Appendix A-1) and **ALJ Murphy's ruling on November 8, 2024** (Appendix A-2)—but also retaliated against Plaintiff by issuing fraudulent determinations, **manipulating judicial processes, and suppressing Plaintiff's economic stability**.

4. **Plaintiff suffered targeted racial discrimination in violation of 42 U.S.C. §§ 1981 and 1982,** wherein Defendants' **selective enforcement of procedural barriers** effectively denied **Plaintiff's contractual rights to unemployment benefits**—a financial resource

critical to economic stability. The Defendants' misconduct, including their refusal to process **valid claims and their fabrication of pretextual denials,** reflects an institutional bias against Plaintiff **as a Black claimant asserting his rights.**

5. **Key aspects of Defendants' unlawful conduct include:**
   - o **DWD's refusal to comply with multiple ALJ rulings** in Plaintiff's favor, even after **the Review Board dismissed the agency's appeals (Appendix A-3).**
   - o **Issuance of fraudulent, contradictory determinations between December 14, 2024, and January 25, 2025** to retaliate against Plaintiff for asserting his rights (Appendix E-2).
   - o **The Indiana Court of Appeals' unlawful dismissal of Case No. 25A-EX-64 on January 22, 2025,** falsely citing **"lack of standing,"** then quietly reinstating it after being exposed (Appendices D-1, F-1).
   - o **Procedural fragmentation of Plaintiff's appeals on January 10, 2025, into five separate cases (Case Nos. 25A-EX-64 to 25A-EX-68),** creating unnecessary legal roadblocks (Appendix C-4, E-1).
   - o **Denial of Plaintiff's in forma pauperis status to impose financial hardship,** violating his due process rights (Appendices B-5, D-3).
   - o **Conspiracy among Defendants to manipulate procedural rules,** block judicial review, and economically suppress Plaintiff's ability to sustain himself while pursuing claims.
6. **DWD engaged in a clear pattern of retaliation** after Plaintiff exercised his legal rights, unlawfully issuing **fraudulent determinations for seven separate weeks**—despite those same weeks being **covered by ALJ rulings affirming Plaintiff's eligibility (Appendix C-5, E-2).** Additionally, DWD's **claims investigator, Ms. Kimberly Walcott, sought to retroactively impose compliance requirements that were never disclosed (Appendix C-2),** further proving the agency's retaliatory intent.
7. **The ICA and the Review Board conspired to suppress Plaintiff's judicial relief** by:
   - o **Unilaterally reclassifying and reassigning case filings to obscure legal arguments and obstruct due process (Appendices E-1, D-2).**
   - o **Weaponizing procedural rules to manufacture barriers to appellate relief, particularly by dismissing and reinstating appeals arbitrarily.**
   - o **Suppressing Plaintiff's access to justice by issuing a final dismissal on February 11, 2025 (Appendix D-6), closing all avenues for state-level recourse.**
8. **Plaintiff was forced to escalate through unnecessary legal channels,** enduring months of procedural delays, wrongful dismissals, and intentional suppression of due process rights. **From September 3, 2024, to December 9, 2024, no additional administrative steps were required**—yet in the Writ of Mandamus case, **DWD falsely claimed Plaintiff skipped administrative steps (Appendix B-3, F-1). The truth is that Defendants created procedural obstacles post-factum to justify their misconduct and suppress Plaintiff's access to relief.**
9. **Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief due to Defendants' systemic negligence, procedural fraud, and economic suppression.**
   - o **Declaratory relief** is necessary to establish that **DWD's retaliatory actions and ICA's procedural manipulation violated Plaintiff's statutory and constitutional rights.**

- o **Injunctive relief** is required to compel the **immediate disbursement of unlawfully withheld unemployment benefits** and to **prohibit further systemic abuse against similarly situated claimants.**
- o **Compensatory damages** are warranted for **economic losses, emotional distress, and prolonged financial instability caused by Defendants' misconduct.**
- o **Punitive damages** are necessary to deter **DWD, the Review Board, and the ICA from continuing their pattern of procedural sabotage and due process violations against claimants.**

10. **Defendants are equitably estopped from asserting defenses based on administrative exhaustion or lack of standing** because their own misconduct—including **the wrongful dismissal of ALJ Botkin's ruling (Appendix A-5), the ICA's contradictory legal reasoning (Appendix D-2, D-4), and DWD's continuous procedural fraud (Appendix C-1, C-5, E-2)—render such defenses void under the doctrine of equitable estoppel.**

11. **Plaintiff's claims are supported by federal law:**

- **42 U.S.C. § 1981** – Protects Plaintiff's contractual rights to unemployment benefits from racial discrimination.
- **42 U.S.C. § 1982** – Prohibits race-based economic retaliation and deprivation of property (unemployment benefits).
- **42 U.S.C. § 1983** – Holds state actors accountable for depriving Plaintiff of benefits under color of law.
- **42 U.S.C. § 1985** – Prohibits conspiracies to interfere with Plaintiff's access to justice.
- **42 U.S.C. § 1986** – Holds state officials liable for failing to prevent known civil rights violations.
- **12 U.S.C. § 5567** – Protects Plaintiff against unlawful retaliation for asserting statutory rights.
- **26 U.S.C. § 3304(a)(5)** – Federal unemployment law mandating compliance with ALJ decisions, which Defendants ignored.

12. **Plaintiff's case is not an isolated incident** but a **systemic failure within Indiana's unemployment system,** where state agencies conspire to **suppress claimants' rights, obstruct access to relief, and impose economic suppression tactics.** Without federal intervention, these abuses will continue, undermining due process protections for all claimants.

13. **Plaintiff requests that this Court exercise its authority to:**

- Hold **Defendants accountable** for their systemic violations;
- Grant **all appropriate legal and equitable relief;** and
- Issue **corrective measures to prevent continued judicial overreach, procedural fraud, and economic suppression** in unemployment cases across Indiana.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under **28 U.S.C. § 1331** because Plaintiff's claims arise under federal law, including **42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986, 12 U.S.C. § 5567**, and **26 U.S.C. § 3304(a)(5)**. These statutes collectively prohibit state actors from engaging in racial discrimination, deprivation of property rights, conspiracy to obstruct justice, and retaliation against individuals asserting their economic and statutory rights.

15. **Jurisdiction under 42 U.S.C. §§ 1981 and 1982:** This Court has jurisdiction over **Plaintiff's racial discrimination and economic suppression claims** because Defendants engaged in selective enforcement of procedural barriers, disproportionately targeting Plaintiff based on race, thereby **denying Plaintiff's contractual rights to unemployment benefits and financial resources necessary for economic stability** (Appendix A-1, A-2, A-3, E-2).

16. **Jurisdiction under 42 U.S.C. §§ 1983, 1985, and 1986:** This Court has jurisdiction over claims that **Defendants acted under color of state law** to deprive Plaintiff of constitutional rights, conspired to suppress Plaintiff's claims through procedural sabotage, and failed to prevent known violations of due process (Appendix B-2, B-6, B-7, F-4).

17. **Jurisdiction under 12 U.S.C. § 5567:** Plaintiff's claims also arise under **federal whistleblower protections**, which prohibit retaliation against individuals asserting their statutory rights. Defendants engaged in retributive actions—**issuing fraudulent determinations, manipulating appellate review, and fabricating compliance requirements**—all aimed at punishing Plaintiff for exercising his rights (Appendix C-1, C-2, C-3, E-2).

18. **Jurisdiction under 26 U.S.C. § 3304(a)(5):** Defendants have **violated federal unemployment insurance funding requirements** by refusing to comply with final ALJ rulings, issuing retaliatory denials, and obstructing the lawful disbursement of benefits. The **federal unemployment insurance program mandates state compliance with federal standards**, which Indiana's agencies have blatantly disregarded (Appendix A-1, A-2, A-3, B-3).

19. This Court also has **supplemental jurisdiction** under **28 U.S.C. § 1367** over Plaintiff's state-law claims, which arise from the same pattern of wrongful conduct. Defendants have violated multiple provisions of Indiana law, including:

- **Indiana Constitution, Article 1, Sections 12 & 23:** Guarantees **due process and equal protection** under the law. Defendants' procedural manipulation, economic suppression, and bad faith litigation violate these constitutional protections.
- **Ind. Code § 22-4-14-3:** Requires the **prompt and lawful disbursement of unemployment benefits.** Defendants unlawfully **withheld benefits, ignored final ALJ rulings, and engaged in procedural manipulation to delay payment indefinitely** (Appendix B-1, B-2, C-1).
- **Ind. Code § 22-4-15-1:** Governs **eligibility for unemployment benefits.** Defendants acted in bad faith by **denying benefits without legal justification, ignoring ALJ rulings, and contradicting their own prior determinations** (Appendix A-1, A-2, A-3, B-4).
- **Ind. Code § 22-5-3-3:** Prohibits **retaliation against individuals asserting legally protected rights.** Defendants engaged in a **coordinated effort to retaliate against**

**Plaintiff** by issuing **seven fraudulent determinations** between **December 14, 2024, and January 25, 2025**, despite Plaintiff's eligibility already being confirmed (Appendix C-3, C-5, E-2).

- **Ind. Code § 34-13-3-8:** Establishes **government liability for negligence**. Defendants acted **recklessly and arbitrarily**, violating their statutory duties and depriving Plaintiff of legally entitled benefits (Appendix B-7, D-5, D-6).

20. **Venue is proper** in the **United States District Court for the Northern District of Indiana** under **28 U.S.C. § 1391(b)(1) and (b)(2)** because:

- **Defendants' wrongful actions were carried out in Indiana**, specifically within **Lake County**, where Plaintiff domiciles and was employed.
- The **Indiana Department of Workforce Development, the Review Board, and the Indiana Court of Appeals** are state entities that engaged in misconduct **within this district**, directly affecting Plaintiff.
- **All acts of procedural sabotage, retaliatory determinations, and due process violations were committed within the jurisdiction of this Court** (Appendices A-1 through A-5, C-1, D-1, E-2).

**Equitable Estoppel & Preemptive Defense Against Exhaustion Claims**

21. **Defendants are equitably estopped** from asserting any defenses that claim **Plaintiff failed to exhaust administrative remedies**, as such an argument is factually and legally **inapplicable.**

- **From September 3, 2024, to December 9, 2024, Plaintiff had no additional administrative steps to exhaust**—every ALJ ruling was in Plaintiff's favor (Appendix A-1, A-2, A-3).
- **DWD falsely argued in the Writ of Mandamus case that Plaintiff "skipped administrative steps," when in reality, Defendants created artificial procedural barriers post-factum to justify their misconduct** (Appendix B-1, B-2, B-3, C-4).
- **ALJ Blakely's ruling on December 9, 2024, forced Plaintiff into an unnecessary and unjustified appellate process**, contradicting prior rulings and **intentionally manufacturing legal ambiguity** (Appendix A-4, B-4, B-5).

22. **Defendants' actions actively prevented Plaintiff from obtaining relief through standard administrative channels**, forcing the need for federal intervention. **Equitable estoppel applies because:**

- The **Review Board improperly dismissed ALJ Botkin's ruling without appeal**, leaving Plaintiff without a remedy (Appendix A-1, A-3, A-5, B-1).
- The **ICA arbitrarily dismissed Case No. 25A-EX-64 on January 22, 2025**, falsely citing "lack of standing"—then reinstating it after being exposed (Appendix D-1, D-2, F-1).

- The **DWD issued fraudulent benefit determinations for seven separate weeks** during an already-suspended benefits period **as a retaliatory measure** (Appendix C-3, C-5, E-2).

23. **Constitutional Violations**: Defendants' misconduct violates fundamental constitutional rights, including **the Fourteenth Amendment's Due Process and Equal Protection Clauses**:

- The **arbitrary and retaliatory denial of benefits, procedural fragmentation, and economic suppression through filing fee barriers** constitute a direct violation of **due process** (Appendices A-1 through A-5, B-5, D-5).
- **Defendants weaponized procedural mechanisms** to deprive Plaintiff of the same legal protections afforded to other claimants, violating **equal protection** (Appendix C-1, D-2, D-6).

24. **Public Interest Consideration**: This case presents a matter of **significant public interest**, as it **exposes systemic failures** within Indiana's unemployment system. **The pattern of arbitrary dismissals, procedural inconsistencies, economic suppression, and retaliatory determinations reveals a systemic scheme to suppress claimant rights** (Appendices A-1 through A-5, B-1 through B-7, C-1 through C-5).
25. **Accordingly, this Court has proper jurisdiction and venue to hear this case**, and **Defendants cannot lawfully evade accountability** by invoking procedural defenses that they themselves manufactured to obstruct justice.

---

# PARTIES

**Plaintiff**

26. Plaintiff, **Jordan C. Smith, Agent on behalf of JORDAN TALLEY-SMITH**, domiciled in Indiana, is a lawful claimant to unemployment benefits that were wrongfully withheld by Defendants through a coordinated scheme of procedural sabotage, economic suppression, and judicial obstruction. Plaintiff lawfully applied for unemployment benefits following **wrongful termination from Webb Ford on May 21, 2024**, and secured multiple favorable rulings from Administrative Law Judges, including:

- **ALJ Botkin's ruling on September 4, 2024** (Appendix A-1), which **affirmed Plaintiff's eligibility and ordered DWD to release benefits**.
- **ALJ Murphy's ruling on November 8, 2024** (Appendix A-2), which **further confirmed eligibility and contradicted DWD's continued obstruction**.

27. Despite these **final, binding rulings**, Defendants engaged in bad faith litigation to deprive Plaintiff of lawfully entitled benefits. Plaintiff was subjected to an escalating campaign of **retaliatory denials, administrative delays, and judicial suppression,**

ultimately forcing Plaintiff into unnecessary litigation before the **Indiana Court of Appeals (ICA)**.

28. Defendants' misconduct caused **severe economic harm, emotional distress, and a deprivation of due process**, as outlined in **Appendices D-3 (Affidavit of Financial, Emotional, and Psychological Harm) and F-1 (Timeline of Events)**, and violated Plaintiff's constitutional rights under the **Fourteenth Amendment**, as well as statutory protections under **42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986**.

## Defendants

## Indiana Department of Workforce Development (DWD)

29. **DWD**, an Indiana state agency, is responsible for administering unemployment benefits in compliance with **federal and state law**. However, instead of fulfilling its duty impartially and in good faith, **DWD engaged in systemic abuse**, including:

- **Failure to comply with final ALJ rulings** despite multiple decisions affirming Plaintiff's eligibility **(Appendix A-1, A-2, B-1)**.
- **Issuance of fraudulent determinations** between **December 14, 2024 – January 25, 2025**, as a form of **retaliation** against Plaintiff for asserting his legal rights **(Appendix C-5, E-2)**.
- **Procedural fraud**, including unnecessary **retroactive compliance requirements** and **fabricated inquiries** designed to deny benefits **(Appendix C-1, C-2, C-3)**.
- **Misleading legal arguments in the Writ of Mandamus case**, falsely claiming Plaintiff **"skipped administrative steps"** despite **no additional remedies being available** at the time **(Appendix A-1, B-3, B-4)**.

## Review Board of the Indiana Department of Workforce Development (Review Board)

30. **The Review Board**, the administrative appellate body responsible for reviewing ALJ decisions, **engaged in procedural sabotage** by:

- **Illegally dismissing ALJ Botkin's ruling on December 13, 2024**, effectively erasing Plaintiff's **entitlement to benefits without a valid appeal (Appendix A-1, A-3, A-5)**.
- **Applying selective and inconsistent review standards**, allowing **DWD to benefit while suppressing claimants' rights (Appendix B-6, B-7, F-4)**.
- **Ignoring blatant due process violations**, including **DWD's issuance of fraudulent determinations as retaliation** for Plaintiff's legal challenges **(Appendix C-3, C-5, E-2)**.

## Indiana Court of Appeals (ICA)

31. **The ICA engaged in judicial overreach and procedural sabotage** to suppress Plaintiff's unemployment claims through:

- **Dismissal of Case No. 25A-EX-64 with prejudice on January 22, 2025**, under false claims of **"lack of standing"**, despite final ALJ rulings **confirming Plaintiff's eligibility (Appendix A-1, A-5, D-1).**
- **Fragmentation of Plaintiff's appeal into five separate cases (January 10, 2025)**, creating unnecessary legal barriers and obstructing judicial review **(Appendix C-4, E-1, F-4).**
- **Unilateral reclassification of case filings**, moving Plaintiff's documents from **Case No. 25A-EX-64 to Case No. 25A-EX-67** after dismissing the former, obstructing due process **(Appendix B-6, C-4, E-1).**
- **Denial of in forma pauperis motion (January 22, 2025)**, unlawfully imposing an **economic barrier to justice**, despite Plaintiff's **clear financial hardship (Appendix B-5, B-7, D-3).**
- **Reinstating Case No. 25A-EX-64 (January 27, 2025) after Plaintiff's complaint**, exposing that the **ICA's original dismissal lacked legal merit and was a deliberate act of suppression (Appendix D-2, D-4, F-1).**

## Defendants' Coordinated Conduct

32. **Defendants, acting in concert under color of state law, engaged in a calculated scheme to obstruct Plaintiff's unemployment benefits and judicial relief**, violating both **procedural due process** and **equal protection** under the **Fourteenth Amendment.**
33. **Defendants may attempt to argue that their actions were legally justified procedural decisions.** However, **this argument fails under equitable estoppel**—Defendants **created the very procedural barriers that they now seek to use as a defense.** Under well-established legal principles, **state actors cannot manufacture obstacles and then claim the Plaintiff failed to overcome them.**
34. Each **Defendant played a specific role** in depriving Plaintiff of unemployment benefits:

- **DWD fabricated pretextual benefit denials and misrepresented procedural obligations (Appendix E-2).**
- **The Review Board erased final ALJ rulings, unlawfully nullifying Plaintiff's entitlement (Appendix A-5).**
- **ICA acted as the final enforcer of this procedural fraud**, using **arbitrary dismissals, economic suppression, and judicial obstruction** to prevent Plaintiff from receiving unemployment benefits **(Appendix D-5, D-6).**

35. **Plaintiff seeks relief against all Defendants** for:

- **Conspiring to obstruct justice.**
- **Depriving Plaintiff of benefits without due process.**
- **Retaliating against Plaintiff for asserting legal rights.**

36. Plaintiff brings claims against the **Indiana Court of Appeals (ICA) not for its role in adjudicating appeals, but for its systemic procedural violations that deprived Plaintiff of due process and equal protection**. ICA engaged in procedural manipulation, including wrongful dismissals, arbitrary reclassifications, and economic suppression through financial barriers. These actions extend beyond mere judicial decision-making and instead constitute **administrative misconduct aimed at obstructing access to justice.**

- Plaintiff does not seek monetary relief against judicial officers for adjudicative acts but seeks injunctive and declaratory relief to address systemic procedural violations that undermine due process.

37. **Defendants' actions were not mere administrative missteps**—they were **intentional efforts to prevent Plaintiff from obtaining justice**, requiring **federal court intervention**.

# FACTUAL ALLEGATIONS

## A. Defendants' Systematic Suppression of Plaintiff's Unemployment Benefits

## DWD's Defiance of ALJ Rulings & Fraudulent Determinations

38. Plaintiff, **Jordan C. Smith, Agent on behalf of JORDAN TALLEY-SMITH**, was unlawfully deprived of unemployment benefits despite multiple Administrative Law Judges (ALJs) issuing final rulings in his favor. On **September 3, 2024**, Plaintiff participated in an appeal hearing before **ALJ Botkin**, where he refuted DWD's baseless allegations of misconduct. On **September 4, 2024**, ALJ Botkin ruled that Plaintiff was wrongfully denied benefits, confirming that Plaintiff did not engage in disqualifying misconduct. **Appendix A-1** (ALJ Botkin's Ruling, 9/4/24) documents this ruling.

39. Despite the finality of ALJ Botkin's ruling, DWD **failed to release benefits** and instead obstructed Plaintiff's access through procedural mismanagement and arbitrary denials.

40. On **November 7, 2024**, Plaintiff participated in a second appeal hearing before **ALJ Murphy**, where he again challenged DWD's wrongful determinations. On **November 8, 2024**, ALJ Murphy issued another **ruling in Plaintiff's favor**, reaffirming that **DWD's continued denials were unlawful**. **Appendix A-2** (ALJ Murphy's Ruling, 11/8/24) documents this decision.

41. On **November 22, 2024**, the Review Board denied DWD's appeal, upholding ALJ Murphy's ruling. **Appendix A-3** (Review Board Denial of DWD's Appeal, 11/22/24) confirms that DWD had no legal basis to continue withholding benefits.

42. Instead of complying with **two final rulings confirming Plaintiff's eligibility**, DWD retaliated by fabricating **fraudulent determinations between December 14, 2024, and January 25, 2025**, which denied Plaintiff benefits during already-suspended periods. **Appendix E-2** (DWD's Baseless Determinations, 12/14/24 – 1/25/25) provides direct evidence of this retaliation.

## B. DWD's Procedural Sabotage & Retaliatory Conduct

43. On **September 24, 2024**, Plaintiff submitted a **formal demand for the immediate release of benefits** in accordance with ALJ Botkin's ruling. **Appendix B-1** (Demand for Immediate Release of Benefits, 9/24/24) documents this request.

44. On **September 27, 2024**, rather than complying with the ruling, DWD **contacted Plaintiff under the guise of a work search verification inquiry**, attempting to impose post-hoc administrative hurdles. **Appendix C-1** (Transcript of DWD's Noncompliance, 9/27/24) reveals this bad-faith maneuver.

45. On **October 1, 2024**, Plaintiff filed a **Writ of Mandamus in Lake Superior Court** to compel DWD's compliance. **Appendix B-2** (Petition for Writ of Mandamus, 10/1/24) provides evidence of this legal action.

46. On **October 7, 2024**, DWD's claims investigator, **Ms. Kimberly Walcott**, falsely alleged that Plaintiff had failed to attend a mandatory reemployment class—a requirement never disclosed prior to this date. **Appendix C-2** (Transcript of DWD Call with Kimberly Walcott, 10/7/24) confirms this unlawful retroactive enforcement.

47. On **December 9, 2024**, ALJ Blakely issued **ambiguous and contradictory rulings**, reversing portions of ALJ Botkin's and ALJ Murphy's decisions **without justification**, forcing Plaintiff into further unnecessary appeals. **Appendix A-4** (ALJ Blakely's Rulings, 12/9/24) highlights these contradictions.

## C. The Indiana Court of Appeals' (ICA) Judicial Bias & Procedural Fraud

48. On **January 8, 2025**, Plaintiff filed a **Notice of Appeal with the ICA** challenging due process violations. Instead of reviewing the case fairly, **ICA actively manipulated Plaintiff's appeals to suppress judicial review. Appendix B-5** (Notice of Appeal, 1/8/25) provides documentation.

49. On **January 10, 2025**, ICA **arbitrarily separated Plaintiff's single appeal into five separate cases (Nos. 25A-EX-64 through 25A-EX-68)**, creating unnecessary procedural barriers. **Appendix E-1** (ICA's Unilateral Separation of Cases, 1/10/25) confirms this procedural fraud.

50. On **January 21, 2025**, Plaintiff **submitted a fully developed Appellant's Brief, Appendix, and Addendum tailored to Case No. 25A-EX-64 per ICA's instructions. Appendix F-1** (Appellant's Brief Submission, 1/21/25) provides direct evidence.

51. On **January 22, 2025**, ICA **dismissed three cases, including Case No. 25A-EX-64, with prejudice**, falsely claiming that Plaintiff had "no demonstrable injury." **Appendix D-1** (ICA's Dismissal of Case No. 25A-EX-64, 1/22/25) highlights this fabricated legal standard.

52. On **January 27, 2025, after Plaintiff exposed ICA's misconduct through a voicemail complaint**, ICA **quietly reinstated Case No. 25A-EX-64. Appendix F-1** (ICA's Reinstatement of Case No. 25A-EX-64, 1/27/25) confirms this reversal, proving the prior dismissal was legally baseless.

53. On **February 1, 2025**, Plaintiff filed a **Notice of Judicial Bias & Intent to Seek Federal Review**, exposing ICA's pattern of obstruction. **Appendix D-5** (Notice of Judicial Bias, 2/1/25) provides supporting evidence.

54. On **February 3, 2025**, ICA imposed a **mandatory filing fee deadline**, despite Plaintiff's pending **Motion to Proceed In Forma Pauperis. Appendix B-5** (Revised Motion and Affidavit, 1/29/25) documents this unconstitutional economic suppression.

55. On **February 11, 2025**, ICA dismissed **Case No. 25A-EX-67 with prejudice**, without explanation, **closing all avenues for state-level recourse. Appendix D-6** (ICA's Final Dismissal of Case No. 25A-EX-67, 2/11/25) confirms this final act of suppression.

## D. Defendants' Coordinated Retaliation Against Plaintiff

56. The combined actions of DWD, the Review Board, and ICA resulted in **Plaintiff's complete deprivation of legally entitled unemployment benefits**, leaving Plaintiff with no alternative but to **seek federal judicial intervention**.

57. Defendants engaged in a **deliberate conspiracy to obstruct Plaintiff's access to benefits, retaliate for legal challenges, and suppress judicial oversight**, in violation of:

- **42 U.S.C. § 1981 & § 1982** (economic discrimination).
- **42 U.S.C. § 1983** (deprivation of rights under color of state law).
- **42 U.S.C. § 1985** (conspiracy to interfere with Plaintiff's rights).
- **42 U.S.C. § 1986** (neglect to prevent civil rights violations).
- **12 U.S.C. § 5567** (Retaliation for Asserting Economic Rights).
- **26 U.S.C. § 3304(a)(5)** (federal unemployment compliance violations).

58. Plaintiff has **exhausted all available administrative remedies** and now seeks **federal relief to correct these systemic violations of due process, equal protection, and statutory rights**.

## COUNT I – 42 U.S.C. § 1981 (DISCRIMINATION IN CONTRACTUAL & ECONOMIC RIGHTS)

**Legal Standard**

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff brings this claim under **42 U.S.C. § 1981**, which guarantees all persons within the United States the right to **make and enforce contracts, including employment-related agreements and government-administered benefits, free from racial discrimination.** This statute applies to both private actors and state entities acting under color of law to interfere with contractual rights based on race.

61. Plaintiff's **eligibility for unemployment benefits** constitutes both a contractual and statutory right under **Indiana Unemployment Insurance Law (Ind. Code § 22-4-14-3) and federal unemployment law (26 U.S.C. § 3304(a)(5))**, which **mandate fair, nondiscriminatory administration** of benefits.

62. Defendants **Indiana Department of Workforce Development (DWD), the Review Board, and the Indiana Court of Appeals (ICA)** engaged in a pattern of **racial and economic discrimination** by:

- **Ignoring final ALJ rulings** that confirmed Plaintiff's eligibility while promptly disbursing benefits to similarly situated white claimants.
- **Imposing arbitrary procedural barriers** to suppress Plaintiff's ability to access unemployment compensation.
- **Retaliating against Plaintiff** for asserting his legal rights by fabricating new denials after favorable ALJ rulings.
- **Denying Plaintiff's in forma pauperis motion (January 22, 2025),** imposing an unconstitutional economic barrier that prevented Plaintiff from pursuing legal remedies.

**Factual Allegations Supporting Disparate Treatment**

63. Plaintiff lawfully applied for unemployment benefits following **wrongful termination from Webb Ford on May 21, 2024** and successfully secured two **favorable ALJ rulings**:

- **ALJ Botkin's Ruling (September 4, 2024) (Appendix A-1):** Confirmed Plaintiff's eligibility and ordered benefits to be disbursed.
- **ALJ Murphy's Ruling (November 8, 2024) (Appendix A-2):** Further confirmed Plaintiff's eligibility, contradicting DWD's continued obstruction.

64. Despite these rulings, **DWD refused to disburse Plaintiff's benefits** and instead initiated a **series of procedural obstacles designed to prevent relief:**

- **September 24, 2024:** Plaintiff submitted a **formal demand for immediate benefits** per ALJ Botkin's ruling (Appendix B-1). **DWD refused compliance.**
- **October 1, 2024:** Plaintiff was forced to escalate the issue by filing a **Writ of Mandamus** to compel DWD to release benefits (Appendix B-2).
- **December 9, 2024:** ALJ Blakely issued a **contradictory and ambiguous ruling**, contradicting prior ALJ decisions and forcing Plaintiff into an **unnecessary appeal** (Appendix A-4).
- **December 14, 2024 – January 25, 2025: DWD issued seven fraudulent determinations**, retroactively denying benefits during already-suspended periods, proving these denials were retaliatory (Appendix E-2).

65. **Upon information and belief, and subject to discovery, white claimants were not subjected to these procedural barriers and wrongful denials.**

- Unlike Plaintiff, **white claimants with comparable employment histories and procedural statuses** were granted **expedited processing of their appeals**.
- **White claimants were not required to file Writs of Mandamus** to compel compliance with ALJ rulings, whereas Plaintiff was forced to litigate at multiple levels.
- **Multiple white claimants received prompt payment of benefits** after ALJ rulings in their favor **without fraudulent post-hoc eligibility denials or retaliatory determinations.**
- The **unlawful fragmentation of Plaintiff's appeal into five separate cases**, which caused **significant delays and confusion,** was not imposed on **similarly situated white appellants.**

## ICA's Retaliation & Racial Bias

66. The **Indiana Court of Appeals (ICA) engaged in procedural discrimination** by:

- **Dismissing Plaintiff's appeal (Case No. 25A-EX-64) with prejudice (January 22, 2025)** under the false claim of "lack of standing," despite clear evidence of economic harm (Appendix D-1, D-4).
- **Fragmenting Plaintiff's appeal into five separate cases (January 10, 2025),** creating procedural confusion that **was not imposed on similarly situated white appellants** (Appendix C-4, E-1).
- **Denying Plaintiff's motion to proceed in forma pauperis (January 22, 2025)** despite clear financial hardship, violating **Boddie v. Connecticut, 401 U.S. 371 (1971),** which prohibits **economic barriers to justice** (Appendix B-5, D-3).
- **Reinstating Case No. 25A-EX-64 (January 27, 2025)** only after **Plaintiff's voicemail complaint exposed the procedural misconduct** (Appendix D-2, F-1).

67. The ICA's conduct demonstrates **clear racial and economic bias** by **creating procedural roadblocks that were not imposed on white claimants.**

## Retaliation for Asserting Legal Rights

68. Defendants weaponized **procedural barriers against Plaintiff in direct retaliation** for asserting his rights under **42 U.S.C. § 1981 and 12 U.S.C. § 5567.** The **retaliatory intent** behind this misconduct is demonstrated by:

- **The timing of fraudulent determinations,** which were issued **only after Plaintiff filed a Writ of Mandamus** compelling compliance with ALJ rulings (Appendix B-2).
- **The denial of Plaintiff's in forma pauperis request (January 22, 2025)** despite clear financial hardship—an action **not taken against similarly situated white claimants** (Appendix B-5, D-3).

- **The imposition of post-hoc compliance requirements**, including **Union Status Inquiries and mandatory reemployment classes**, which were selectively applied **only to Plaintiff** as a means of obstructing benefit access (Appendix C-2, C-3).
- **The retaliatory suspension of benefits for weeks that had already been ruled in Plaintiff's favor**, proving that Defendants' actions were punitive rather than administrative (Appendix C-5, E-2).

## Case Law Supporting § 1981 Claim

69. The **Supreme Court** has consistently held that **economic rights and government-administered benefits cannot be denied based on race**:

- **Runyon v. McCrary, 427 U.S. 160 (1976):** Held that **both private and public actors** cannot discriminate in **contractual relationships.**
- **Griffin v. Breckenridge, 403 U.S. 88 (1971):** Established that **conspiracies to interfere with legal rights based on racial bias violate federal law.**
- **Boddie v. Connecticut, 401 U.S. 371 (1971):** Confirmed that **economic barriers to judicial relief violate due process,** supporting Plaintiff's claim regarding **ICA's denial of in forma pauperis status.**

## State Law Equivalents

70. Defendants' conduct also violates **Indiana state law**:

- **Ind. Code § 22-4-14-3:** Requires that **unemployment benefits be paid promptly** following a favorable ruling.
- **Ind. Code § 22-5-3-3: Prohibits retaliation** against individuals for asserting employment-related legal rights.
- **Ind. Constitution, Article 1, Sections 12 & 23: Guarantees due process and equal protection, which were systematically denied** to Plaintiff.

## Conclusion

71. Defendants' deliberate racial discrimination, procedural obstruction, and economic retaliation **violate 42 U.S.C. § 1981.** The targeted imposition of **procedural barriers and fabricated denials on Plaintiff—while white claimants were granted expedited processing—constitutes a direct violation** of equal protection and economic rights.
72. Plaintiff seeks **declaratory and injunctive relief to halt these discriminatory practices,** along with **compensatory and punitive damages** for the **economic and emotional harm** caused by Defendants' unlawful conduct.

## COUNT II – 42 U.S.C. § 1982 (PROPERTY & ECONOMIC RETALIATION)

**Legal Standard**

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Under **42 U.S.C. § 1982**, all U.S. citizens are **guaranteed the same property rights as white citizens**, including the right to **"inherit, purchase, lease, sell, hold, and convey real and personal property" without racial discrimination**. The **Supreme Court in Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968),** held that this statute applies broadly to prohibit any form of **racial discrimination that interferes with economic or property rights.**

75. Although unemployment benefits are **not traditionally classified as real property,** the Supreme Court in **Goldberg v. Kelly, 397 U.S. 254 (1970),** ruled that **public benefits are a property interest protected under the Due Process Clause of the Fourteenth Amendment.** Therefore, any unjustified withholding or denial of unemployment benefits constitutes an **unconstitutional deprivation of property rights**, particularly where racial discrimination or retaliatory motives are involved.

**Application to Defendants' Conduct**

76. **Upon information and belief, and subject to discovery, similarly situated white claimants did not experience the same procedural barriers and wrongful denials.**

- While Plaintiff's claim was **fragmented into five separate cases and delayed indefinitely**, white claimants with **comparable employment histories and procedural statuses received expedited processing and timely payment of benefits.**
- Unlike Plaintiff, whose benefits were **unlawfully withheld despite two favorable ALJ rulings**, white claimants **did not have to file a Writ of Mandamus** to enforce compliance with ALJ decisions.
- Plaintiff has identified **multiple instances** where white claimants were granted benefits **without being subjected to retaliatory denials, fabricated eligibility reviews, or unnecessary procedural requirements.**
- **Defendants' systematic obstruction of Plaintiff's benefits, while processing white claimants' benefits without such burdens, constitutes a clear violation of 42 U.S.C. § 1982 and the Fourteenth Amendment's Equal Protection Clause.**

77. Defendants **Indiana Department of Workforce Development (DWD), the Review Board, and the Indiana Court of Appeals (ICA),** acting **under color of state law,** engaged in **economic retaliation** against Plaintiff by:

- **Denying Plaintiff unemployment benefits despite multiple ALJ rulings confirming eligibility.**
- **Obstructing Plaintiff's ability to enforce his economic rights** through procedural manipulation.
- **Manufacturing fabricated determinations** to create a **fraudulent justification for denying benefits.**

## Economic Suppression Through Retaliatory Benefit Denials

78. Plaintiff was **entitled to receive unemployment benefits** following his **wrongful termination from Webb Ford on May 21, 2024.** Multiple **Administrative Law Judges (ALJs) ruled in Plaintiff's favor**, confirming that Plaintiff had a legitimate claim to benefits:

- **ALJ Botkin's ruling on September 4, 2024 (Appendix A-1):** Confirmed that Plaintiff was **wrongfully terminated and eligible for benefits.**
- **ALJ Murphy's ruling on November 8, 2024 (Appendix A-2):** Reaffirmed Plaintiff's **eligibility and ordered payment.**

79. Despite these **final and binding rulings,** DWD **refused to release benefits,** unlawfully obstructing Plaintiff's access to financial resources. Plaintiff was **forced to file a Writ of Mandamus on October 1, 2024** (Appendix B-2) to compel compliance with the ALJ decisions.

80. **Retaliatory Denials:** Defendants **deliberately weaponized procedural barriers** to suppress Plaintiff's access to unemployment benefits **in direct retaliation** for asserting his legal rights. The **timing of fraudulent determinations** is **critical evidence** of retaliation:

- **DWD issued seven fraudulent determinations between December 14, 2024, and January 25, 2025,** denying benefits **for weeks that had already been ruled in Plaintiff's favor.**
- **White claimants who obtained ALJ rulings in their favor were not subjected to retroactive benefit denials, fabricated work search inquiries, or reemployment class requirements.**
- These fabricated denials were imposed **selectively on Plaintiff** as part of a **targeted campaign** to suppress his economic stability.
- **The imposition of these fraudulent determinations violated 42 U.S.C. § 1982 by obstructing Plaintiff's right to economic resources while allowing similarly situated white claimants to receive full and timely benefits without unnecessary legal burdens.**

## ICA's Procedural Retaliation & Economic Suppression

81. Plaintiff's legal battle was **further obstructed by ICA's procedural manipulation and economic suppression:**

- **January 22, 2025:** ICA **dismissed Case No. 25A-EX-64 with prejudice** (Appendix D-1), falsely claiming Plaintiff had **"no demonstrable injury,"** despite **months of benefit denials.**
- **January 27, 2025:** ICA **reversed itself and reinstated the case** (Appendix F-1) **only after Plaintiff exposed its procedural misconduct.**
- **February 11, 2025:** ICA **dismissed Case No. 25A-EX-67,** closing **all avenues for Plaintiff's relief and ensuring economic hardship** (Appendix D-6).

---

### Denial of In Forma Pauperis (IFP) Status to Block Judicial Review

82. Defendants also engaged in **economic suppression by obstructing Plaintiff's access to the courts:**

- **January 22, 2025:** ICA **denied Plaintiff's motion to proceed in forma pauperis** despite clear financial hardship **(Appendix D-3: Affidavit of Financial, Emotional, and Psychological Harm).**
- **This forced Plaintiff into an impossible financial position,** where he **could not afford the filing fees** necessary to challenge ICA's wrongful dismissals.
- **Under Boddie v. Connecticut, 401 U.S. 371 (1971),** denying access to courts **based on financial status is a violation of due process.** ICA's actions constituted **economic suppression,** preventing Plaintiff from enforcing his rights to unemployment benefits.

---

### Pretextual Justifications & Equitable Estoppel

83. Defendants will likely attempt to justify their actions by citing **administrative backlog or procedural delays.** However, this defense is **pretextual** and contradicts the **well-documented procedural disparities** between Plaintiff and similarly situated white claimants.

- **White claimants with comparable appeals were processed without similar fabricated eligibility barriers or post-hoc compliance requirements.**
- **Defendants knowingly imposed unnecessary procedural burdens** on Plaintiff, including multiple **Union Status Inquiries and retroactive work search verifications** (Appendices C-1, C-3), while **white claimants were exempt** from these additional layers of scrutiny.
- **Equitable Estoppel applies** because Defendants deliberately **manufactured** these procedural barriers to **obstruct Plaintiff's benefits,** and they **cannot now argue** that their conduct was neutral or justified by administrative backlog.

**Violation of Equivalent State Laws**

84. In addition to violating **42 U.S.C. § 1982**, Defendants' actions **also violate Indiana law**, including:

- **Indiana Constitution, Article 1, Section 12 (Right to Access Justice):** ICA's **refusal to grant in forma pauperis status imposed an unconstitutional economic barrier to judicial relief.**
- **Indiana Code § 22-4-14-3 (Timely Payment of Benefits):** DWD's refusal to pay benefits **despite final ALJ rulings violates Indiana statutory mandates.**
- **Indiana Code § 22-5-3-3 (Retaliation Prohibition):** DWD's fraudulent determinations **constitute retaliation against Plaintiff for asserting his legal rights.**

**Conclusion**

85. Defendants' **deliberate and targeted economic suppression** violated **42 U.S.C. § 1982** by depriving Plaintiff of his right to **receive unemployment benefits on the same terms as white claimants.**
86. Plaintiff seeks **declaratory, injunctive, and compensatory relief** to remedy these **egregious violations** and prevent further **systemic discrimination** against similarly situated claimants.

## COUNT III – 42 U.S.C. § 1983 (DEPRIVATION OF RIGHTS UNDER COLOR OF LAW)

**Legal Standard**

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.
88. Under **42 U.S.C. § 1983**, any person acting under **color of state law** who deprives another of their **constitutional or federal statutory rights** is liable for **damages and equitable relief.** This includes violations of the **Due Process and Equal Protection Clauses of the Fourteenth Amendment.**
89. The **Due Process Clause** guarantees that individuals **cannot be deprived of property, liberty, or life without fair procedures.** In **Goldberg v. Kelly, 397 U.S. 254 (1970),** the U.S. Supreme Court recognized that **public benefits, including unemployment compensation, constitute a protected property interest requiring procedural due process before termination or denial.**
90. The **Equal Protection Clause** prohibits state actors from **treating similarly situated individuals differently without a rational basis.** Courts have held that **racial or**

**economic disparities in public benefit administration** may give rise to an **Equal Protection claim** when claimants of a particular class face **disproportionate obstacles.**

91. State agencies and courts acting under **color of law** cannot **use their authority to obstruct due process, manipulate procedural rules, or create artificial barriers to justice.** In **Mathews v. Eldridge, 424 U.S. 319 (1976),** the Supreme Court held that **due process requires notice, an opportunity to be heard, and a fair adjudication free from arbitrary government action.**

92. The **U.S. Supreme Court in Boddie v. Connecticut, 401 U.S. 371 (1971),** ruled that **imposing economic barriers to judicial review violates due process, particularly when it denies access to fundamental legal rights.**

**Application to Defendants' Conduct**

**Judicial Immunity Does Not Bar Relief Against ICA's Procedural Violations**

93. Judicial immunity does **not** protect state courts from claims seeking **prospective injunctive relief for systemic due process violations.** In **Ex parte Young, 209 U.S. 123 (1908),** the Supreme Court held that **state officials—including judicial officers—can be sued for prospective injunctive relief to prevent ongoing constitutional violations.**

- **Plaintiff does not challenge ICA's authority to adjudicate unemployment claims** but rather seeks **injunctive relief to halt ICA's misuse of procedural mechanisms that obstruct due process and equal protection.**

94. ICA's procedural violations **were not legitimate adjudicative actions** but **deliberate acts of procedural manipulation** designed to obstruct judicial review and violate Plaintiff's right to due process.

**Systematic Procedural Obstruction to Deprive Plaintiff of Due Process**

95. **The Indiana Department of Workforce Development (DWD), the Review Board, and the Indiana Court of Appeals (ICA), acting under color of state law, engaged in a coordinated scheme to obstruct Plaintiff's rights** to unemployment benefits, judicial review, and economic stability through procedural sabotage and retaliatory denials.

96. Plaintiff had a **constitutionally protected property interest** in unemployment benefits after multiple **Administrative Law Judges (ALJs) ruled in his favor**, establishing eligibility:

- **ALJ Botkin's ruling on September 4, 2024 (Appendix A-1)** confirmed wrongful termination and eligibility for benefits.
- **ALJ Murphy's ruling on November 8, 2024 (Appendix A-2)** reaffirmed eligibility and ordered payment.

- **The Review Board's dismissal of DWD's appeal on November 22, 2024 (Appendix A-3)** confirmed the finality of ALJ Murphy's ruling.

97. Despite these rulings, **DWD refused to release Plaintiff's benefits**, unlawfully withholding payments and engaging in procedural obfuscation. Plaintiff was **forced to file a Writ of Mandamus on October 1, 2024** (Appendix B-2) to compel compliance with ALJ decisions.

98. **DWD issued seven fraudulent determinations between December 14, 2024, and January 25, 2025,** denying benefits **for weeks already covered by ALJ rulings.** These **retaliatory denials** (Appendix E-2) demonstrate a **deliberate scheme of economic suppression.**

---

**ICA's Weaponization of Procedural Rules Violated Due Process**

99. ICA **systematically weaponized procedural rules** to deprive Plaintiff of his **right to judicial review,** violating **due process protections under Mathews v. Eldridge, 424 U.S. 319 (1976).**

- **January 22, 2025: ICA dismissed Case No. 25A-EX-64 on fabricated "lack of standing" grounds,** directly contradicting **ALJ rulings confirming Plaintiff's economic injury.** This ruling was **not based on legitimate legal grounds** but was part of a **broader effort to obstruct judicial review** (Appendix D-1).
- **January 27, 2025: ICA's reversal of its dismissal** after Plaintiff exposed **procedural misconduct** demonstrates that its **prior ruling was arbitrary and retaliatory.** Had ICA acted in good faith, **there would have been no justification for reinstating the case only after Plaintiff lodged complaints** (Appendix F-1).
- **February 11, 2025:** ICA's dismissal of **Case No. 25A-EX-67** on procedural grounds **ensured Plaintiff had no further state-level recourse,** further proving a **deliberate suppression of due process** (Appendix D-6).

---

**Financial Barriers to Judicial Review Violated Boddie v. Connecticut**

100.    ICA's denial of Plaintiff's **in forma pauperis (IFP) motion** constituted an **unconstitutional financial barrier to judicial review,** violating **the Equal Protection and Due Process Clauses under Boddie v. Connecticut, 401 U.S. 371 (1971).**

- **Boddie holds that access to the courts cannot be denied solely due to financial inability.** ICA's denial of IFP status, despite clear evidence of Plaintiff's financial hardship, was a **deliberate act of economic suppression designed to obstruct Plaintiff's claims.**
- **ICA selectively applied financial barriers against Plaintiff, while similarly situated claimants were granted IFP status without undue hardship** (Appendix B-7).

- **By conditioning access to appellate review on financial means, ICA directly violated Plaintiff's constitutional right to petition the courts.**

## Pretextual Justifications & Equitable Estoppel

101.     Defendants will likely argue that their actions were **standard procedural adjudications,** but the **evidence proves otherwise.** The **timing, frequency, and coordination of procedural roadblocks** demonstrate **intentional bad faith.**

102.     Defendants may claim that Plaintiff's appeal was dismissed **due to procedural issues** rather than **bad faith.** However:

- **ICA initially dismissed Plaintiff's case for "lack of standing" (Appendix D-1), only to reinstate it after Plaintiff exposed procedural misconduct** (Appendix F-1).
- **DWD continued issuing benefit denials after ALJ rulings, violating statutory mandates** (Appendix E-2).
- **ICA's financial barriers prevented Plaintiff from meaningfully challenging these denials** (Appendix D-5).

103.     **Defendants cannot claim administrative discretion as a defense** when they **knowingly engaged in bad faith litigation.** Under the doctrine of **equitable estoppel,** a party **cannot create procedural obstacles and later rely on them as justification for dismissal.**

## Violation of Equivalent State Laws

104.     In addition to violating **42 U.S.C. § 1983,** Defendants' actions also violate **Indiana law,** including:

- **Indiana Constitution, Article 1, Section 12 (Right to Access Justice)** – ICA's refusal to grant IFP status **imposed an unconstitutional economic barrier to judicial relief.**
- **Indiana Code § 22-4-14-3 (Timely Payment of Benefits)** – DWD's refusal to pay benefits **despite final ALJ rulings violates Indiana statutory mandates.**
- **Indiana Code § 22-5-3-3 (Retaliation Prohibition)** – DWD's fraudulent determinations **constitute retaliation against Plaintiff for asserting his legal rights.**

## Conclusion

105.     Defendants **deliberately obstructed Plaintiff's due process rights,** violating **42 U.S.C. § 1983.**

106.      Plaintiff seeks **declaratory, injunctive, and compensatory relief** to remedy these **egregious violations.**

---

## COUNT IV – 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights)

**Legal Standard**

107.      Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

108.      Under **42 U.S.C. § 1985(2) and (3)**, it is unlawful for **two or more persons to conspire to**:

- **Prevent or obstruct access to justice.**
- **Deprive individuals of equal protection under the law.**
- **Retaliate against individuals for asserting their legal rights.**
- **Engage in acts intended to financially suppress or burden protected claimants.**

109.      In **Griffin v. Breckenridge, 403 U.S. 88 (1971),** the Supreme Court clarified that **§ 1985 extends to conspiracies intended to deprive individuals of federally protected rights,** including due process and equal protection under the **Fourteenth Amendment.**

110.      **Government agencies and officials cannot engage in coordinated procedural obstructions** to deny legitimate claims, fabricate procedural barriers, or impose artificial financial burdens as retaliation against claimants seeking to assert their rights.

---

**Application to Defendants' Conduct**

**Coordinated Scheme to Suppress Unemployment Benefits**

111.      Defendants engaged in a **coordinated scheme to deprive Plaintiff of federally protected rights,** as evidenced by a **pattern of strategic procedural barriers** imposed at every level of review. The sequence of events demonstrates a **clear and intentional effort** among **DWD, the Review Board, and ICA** to obstruct Plaintiff's unemployment benefits and judicial access:

- **DWD's issuance of fraudulent benefit denials** between **December 14, 2024, and January 25, 2025,** coincided directly with Plaintiff's legal actions, proving that these denials were **retaliatory** (Appendix E-2).
- **ICA's abrupt dismissal of Case No. 25A-EX-64 on January 22, 2025,** followed by an **unexplained reinstatement on January 27, 2025,** only after Plaintiff exposed the dismissal as **baseless** (Appendices D-1, D-5, F-1), indicates a **deliberate effort to obstruct due process rather than a neutral procedural decision.**

- **The Review Board's selective refusal to enforce ALJ rulings** that had already been adjudicated in Plaintiff's favor (Appendix A-3) further supports an inference of **coordinated action rather than independent errors.**
- The sequence of procedural actions—**fraudulent denials by DWD, wrongful dismissals by ICA, and non-enforcement by the Review Board**—demonstrates an **orchestrated plan** to suppress Plaintiff's **economic rights and judicial access.**

112.    **The Indiana Department of Workforce Development (DWD), the Review Board, and the Indiana Court of Appeals (ICA) conspired to obstruct Plaintiff's ability to access unemployment benefits by:**

- **Disregarding multiple favorable ALJ rulings** (Appendices A-1, A-2).
- **Wrongfully withholding benefits** even after the **Review Board denied DWD's appeal** of ALJ Murphy's ruling on **November 22, 2024** (Appendix A-3).
- **Retaliating against Plaintiff** by issuing **fraudulent determinations** between **December 14, 2024, and January 25, 2025** (Appendix E-2).

113.    The issuance of **seven baseless determinations** during an **already suspended benefits period** proves a **coordinated effort** to **delay, obstruct, and prevent Plaintiff from receiving legally entitled benefits.**

---

**Procedural Manipulation as a Conspiracy to Deny Due Process**

114.    The **Indiana Court of Appeals (ICA) engaged in a calculated effort** to obstruct Plaintiff's access to judicial review through **procedural manipulation**, in **coordination with DWD and the Review Board.** These actions were **not routine administrative decisions** but were **strategically designed** to deny Plaintiff relief and ensure **economic suppression:**

- **January 10, 2025:** ICA **fragmented Plaintiff's appeal into five separate cases (Case Nos. 25A-EX-64 through 25A-EX-68) without legal justification**, creating **unnecessary legal obstacles** not imposed on **other claimants with similar fact patterns** (Appendices C-4, E-1).
- **January 22, 2025:** ICA **wrongfully dismissed Case No. 25A-EX-64 with prejudice**, falsely claiming **Plaintiff had "no demonstrable injury"** despite concrete financial harm, reinforcing **procedural bias against Plaintiff** (Appendix D-1, D-3).
- **January 27, 2025:** ICA **reinstated Case No. 25A-EX-64** only **after Plaintiff filed a complaint exposing ICA's procedural misconduct,** demonstrating that the **prior dismissal was not a neutral adjudicative decision but an intentional act of obstruction** (Appendices D-2, F-1).
- **February 11, 2025:** ICA **permanently dismissed Case No. 25A-EX-67,** eliminating Plaintiff's **final state-level recourse,** further proving a **systemic suppression effort** (Appendix D-6).

**Use of Financial Suppression as a Retaliatory Tactic**

115.    The **ICA and DWD engaged in financial suppression** as part of a **coordinated conspiracy** to obstruct **Plaintiff's access to judicial review and economic relief.** This economic retaliation was carried out through **selective denial of in forma pauperis (IFP) status** and the imposition of **excessive procedural costs,** violating **due process rights under Boddie v. Connecticut, 401 U.S. 371 (1971):**

- **January 22, 2025:** ICA **denied Plaintiff's IFP motion despite clear and documented financial hardship, a deliberate act of economic suppression** (Appendix B-5, D-3).
- **ICA's denial was not based on neutral financial eligibility criteria** but was **selectively applied against Plaintiff** as part of an **ongoing pattern of procedural obstruction.**
- **By conditioning Plaintiff's access to judicial relief on his ability to pay filing fees, ICA created an unconstitutional economic barrier** that effectively **denied Plaintiff's right to due process.**
- **Other similarly situated claimants were not subjected to these excessive financial burdens,** demonstrating that **ICA's conduct was both discriminatory and retaliatory.**

**Retaliatory Actions for Exercising Legal Rights**

116.    Defendants **punished Plaintiff** for pursuing legal action against the state by creating **post-hoc procedural obstacles:**

- **October 1, 2024:** Plaintiff **filed a Writ of Mandamus** (Appendix B-2).
- **October 7, 2024:** DWD **retroactively imposed a compliance requirement** (a reemployment class) that **was never disclosed prior** (Appendix C-2).
- **December 14, 2024 – January 25, 2025:** DWD issued **seven retaliatory determinations** in **direct response** to Plaintiff's appeals (Appendix E-2).
- **February 1, 2025:** Plaintiff **filed an Emergency Motion to Stay Dismissal Based on Economic Hardship** (Appendix B-7), which ICA **ignored before dismissing Plaintiff's case on February 11, 2025** (Appendix D-6).

117.    This timeline of **retaliatory misconduct confirms that Defendants worked together** to **manufacture procedural justifications** to deny benefits that had **already been adjudicated in Plaintiff's favor.**

**Conclusion**

118.    Defendants **engaged in a coordinated effort** to **obstruct justice, deny benefits, and impose economic hardship upon Plaintiff** for asserting his **legal rights.**

119.    Their **procedural fraud, financial suppression, and retaliatory misconduct** constitute a **conspiracy to interfere with civil rights under 42 U.S.C. § 1985.**

---

## COUNT V – 42 U.S.C. § 1986 (NEGLECT TO PREVENT CIVIL RIGHTS VIOLATIONS)

**Legal Standard**

120.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

121.    Under 42 U.S.C. § 1986, any person or entity with knowledge of a conspiracy to deprive another of their civil rights, as established under 42 U.S.C. § 1985, who has the power to prevent such violations but fails to act, is legally liable.

122.    Courts have consistently held that government officials and entities who knowingly allow systemic due process violations, racial discrimination, or procedural obstruction to persist, despite having the ability to intervene, can be held liable under § 1986.

123.    The Review Board, the Indiana Court of Appeals (ICA), and the Indiana Department of Workforce Development (DWD) had direct knowledge of procedural violations, due process breaches, and unlawful benefit denials, yet took no corrective action.

**Defendants' Failure to Prevent Known Procedural Violations**

124.    **The ICA and Review Board failed to prevent procedural due process violations, despite being aware of wrongful dismissals and economic suppression tactics.**

- On **December 13, 2024**, the Review Board arbitrarily dismissed ALJ Botkin's ruling without appeal, despite it being a **final determination in Plaintiff's favor** (Appendix A-5).
- On **January 22, 2025**, the ICA dismissed Case No. 25A-EX-64 **with prejudice**, falsely citing "lack of standing," despite clear financial harm and ongoing due process violations (Appendix D-1).
- On **January 27, 2025**, after Plaintiff **exposed ICA's misconduct**, the case was quietly reinstated, proving that the **original dismissal was intentional procedural sabotage** (Appendix F-1).
- The **Review Board's inconsistent rulings** (Appendix A-5) show a pattern of refusing to enforce legally binding ALJ decisions, failing to stop procedural abuses within its jurisdiction.

125.    **The Review Board and ICA were notified of ongoing due process violations yet failed to act.**

Page | 25

- The **November 8, 2024, ruling from ALJ Murphy** confirmed Plaintiff's eligibility and ordered benefits, yet **DWD refused to comply** (Appendix A-2).
- The Review Board **denied DWD's appeal of ALJ Murphy's ruling** on **November 22, 2024**, yet took no further action to enforce the ruling (Appendix A-3).
- On **December 10, 2024**, Plaintiff submitted a **Request for Clarification** regarding ALJ Blakely's ambiguous ruling, pointing out procedural inconsistencies, yet **no corrective action was taken** (Appendix B-4).

126.     **The ICA and Review Board failed to act despite having clear authority to prevent these violations.**

- The Review Board **could have enforced ALJ Murphy's decision**, but instead, it allowed DWD to continue issuing fraudulent denials (Appendix A-5, B-3).
- The ICA **possessed the authority to correct procedural irregularities in Plaintiff's appeal**, yet it **fragmented the appeal into five separate cases** to create confusion (Appendix C-4, E-1).
- The ICA imposed **financial suppression tactics** by denying Plaintiff's in forma pauperis motion on **January 22, 2025**, despite being aware of Plaintiff's financial hardship (Appendix B-5, D-1).

**Defendants' Systemic Retaliation and Procedural Sabotage**

127.     **The DWD, ICA, and Review Board collectively refused to enforce ALJ rulings from September 4, 2024 (ALJ Botkin) and November 8, 2024 (ALJ Murphy), despite knowing they were legally binding.**

- DWD, acting under **color of law**, issued **seven fraudulent benefit determinations** between **December 14, 2024 – January 25, 2025**, proving that these were not mere administrative errors but a pattern of intentional misconduct (Appendix C-5, E-2).
- The ICA, aware of DWD's continued suppression, denied Plaintiff's **motion to stay dismissal based on economic hardship** on **February 1, 2025**, ensuring that Plaintiff **had no legal recourse left at the state level** (Appendix B-7).
- On **February 11, 2025**, ICA **dismissed Case No. 25A-EX-67 with prejudice**, blocking further state relief and **proving that the process was rigged against Plaintiff from the start** (Appendix D-6).

128.     **Retaliatory tactics were carried out with full awareness of Defendants.**

- **DWD attempted to retroactively justify procedural delays** only after Plaintiff filed the Writ of Mandamus on **October 1, 2024** (Appendix B-2).
- **On October 7, 2024, DWD falsely claimed Plaintiff failed to attend a mandatory reemployment class**, despite **never informing Plaintiff of this requirement before the ruling** (Appendix C-2).
- The **ICA's fabricated separation of Plaintiff's single appeal into five separate cases on January 10, 2025**, was intended to create a legal maze designed to suppress relief (Appendix E-1).

**Preemptive Defense Against State Counterarguments**

129.    **Defendants' Likely Argument: "We did not have the authority to intervene in agency decisions."**

- **Counter:** As a reviewing body, the ICA **had the power to overturn wrongful dismissals and ensure due process.** The Review Board **had a duty to enforce ALJ rulings rather than dismiss valid appeals without cause.**
- **Plaintiff cites:** *Goldberg v. Kelly, 397 U.S. 254 (1970)*, which establishes that public benefits are a **protected property interest**, meaning administrative agencies have **a constitutional duty to ensure due process.**

130.    **Defendants' Likely Argument: "We followed administrative procedures."**

- **Counter:** The **systemic refusal to correct known violations demonstrates neglect, bad faith, and complicity.** Defendants cannot claim procedural adherence when they **actively manipulated procedures to block benefits.**
- **Plaintiff cites:** *Mathews v. Eldridge, 424 U.S. 319 (1976)*, which holds that **due process protections must be substantive, not just procedural formalities.**

131.    **Defendants' Likely Argument: "The plaintiff had alternative legal remedies."**

- **Counter:** The **state deliberately obstructed every remedy available**, from wrongful ALJ reversals to fabricated procedural dismissals, ensuring that **no viable legal path remained.**
- **Plaintiff cites:** *Boddie v. Connecticut, 401 U.S. 371 (1971)*, which establishes that **economic barriers cannot be used to prevent access to justice.**

132.    **Equitable Estoppel:**

- Defendants cannot now argue that Plaintiff **"failed to exhaust administrative remedies"** when the **Review Board and ICA actively suppressed access to those remedies.**
- Defendants' refusal to correct **known procedural violations** establishes **intentional misconduct, not mere negligence.**

**Violation of Equivalent State Laws**

133.    In addition to violating **42 U.S.C. § 1986**, Defendants' actions also violate **Indiana law**, including:

- **Indiana Constitution, Article 1, Section 12 (Right to Access Justice):** The ICA's refusal to grant in forma pauperis status **imposed an unconstitutional economic barrier to judicial relief.**

- **Indiana Code § 22-4-14-3 (Timely Payment of Benefits):** DWD's refusal to pay benefits **despite final ALJ rulings** violates **Indiana statutory mandates**.
- **Indiana Code § 22-5-3-3 (Retaliation Prohibition):** DWD's fraudulent determinations **constitute retaliation** against Plaintiff for asserting legal rights.

**Summary of Defendants' Unlawful Conduct**

134.    **DWD's Negligence & Economic Suppression:**

- Issued **seven fraudulent determinations** to unlawfully deny Plaintiff's benefits (Appendix C-3, C-5, E-2).
- Ignored **binding ALJ rulings in Plaintiff's favor** (Appendices A-1, A-2, A-3).
- Fabricated **post-ruling procedural barriers** to prevent payment (Appendix B-3, C-1, C-2).

135.    **ICA's Judicial Retaliation & Procedural Sabotage:**

- Dismissed **Plaintiff's appeal on false grounds** (Appendix B-5, D-1).
- Reinstated it after exposure, **proving the dismissal was retaliatory** (Appendix D-2, F-1).
- **Imposed financial hardship** by denying in forma pauperis relief (Appendix B-7, D-3).

136.    **Defendants' refusal to act despite full awareness of due process violations makes them liable under 42 U.S.C. § 1986.** Their **intentional inaction enabled further deprivation of rights**, justifying **federal intervention.**

---

**COUNT VI – 12 U.S.C. § 5567 (Retaliation for Asserting Economic Rights)**

**Legal Standard**

137.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

138.    Under **12 U.S.C. § 5567**, individuals are protected from **retaliation for asserting their economic rights**, particularly in **financial and regulatory matters**. This provision **prohibits state actors from engaging in punitive actions** against individuals for **lawfully challenging financial misconduct** or asserting **entitlements under economic regulations**.

139.    Courts have recognized that **retaliation** can take the form of:

- **Financial suppression**, including unlawful withholding of benefits.
- **Procedural obstruction**, such as fabricated eligibility denials.
- **Economic penalties**, designed to **punish individuals** for asserting legal rights.

140.    The **Consumer Financial Protection Act (CFPA)** under **12 U.S.C. § 5567** extends protections to individuals engaging in **economic disputes with government**

**entities** responsible for **benefit distributions**, ensuring that public agencies **do not retaliate against claimants** for exercising legally protected rights.

141.     Retaliation under this statute includes, but is not limited to:

- **Obstruction of legally owed financial entitlements** (such as unemployment benefits).
- **Imposition of arbitrary procedural barriers** to punish claimants.
- **Economic hardship tactics** designed to suppress legal challenges.

**Application to Defendants' Conduct**

**DWD's Retaliatory Issuance of Seven Fraudulent Determinations**

142.     **The retaliatory nature of Defendants' actions is confirmed** by their issuance of **seven fraudulent determinations** between **December 14, 2024 – January 25, 2025,** despite Plaintiff's benefits **already being suspended until May 2025** under **ALJ Blakely's ruling. This proves that these denials were not part of a legitimate eligibility review** but were instead issued as a **punitive measure to suppress Plaintiff's legal rights** (Appendix E-2).

143.     **Key evidence of DWD's retaliation includes:**

- **No similarly situated claimant** was subjected to post-hoc eligibility reviews **after ALJ rulings confirming benefit entitlement.**
- **DWD's determinations were issued immediately after Plaintiff filed legal challenges, creating a direct link** between Plaintiff's **legal actions and Defendants' retaliatory response.**
- The fact that benefits **remained suspended during this period** further confirms that these denials **had no administrative necessity** but served purely as a **mechanism of economic suppression.**

144.     **DWD's fraudulent determinations** were issued:

- **Without legal basis,** as benefits had already been lawfully adjudicated.
- **With the intent to punish Plaintiff** for exercising their legal rights.
- **As part of a broader scheme** to ensure economic hardship and procedural exhaustion.

**ICA's Economic Retaliation & Suppression of Judicial Review**

145.     **The Indiana Court of Appeals (ICA) actively participated in Defendants' retaliatory scheme** by deliberately **blocking Plaintiff's access to judicial relief,** imposing **procedural and financial barriers** with **no legal justification.**

146.     **Key evidence of ICA's retaliation includes:**

- **January 22, 2025**: ICA denied Plaintiff's **in forma pauperis (IFP) motion**, despite **Plaintiff meeting all indigency requirements** (Appendix B-5, D-1). This denial ensured that **Plaintiff could not continue challenging wrongful benefit denials**.
- **January 22, 2025**: ICA **dismissed Plaintiff's appeal (Case No. 25A-EX-64) with prejudice**, falsely claiming **Plaintiff had "no demonstrable injury"**, despite clear evidence of economic harm (Appendix B-7, D-3).
- **January 27, 2025**: ICA **quietly reinstated Case No. 25A-EX-64** after **Plaintiff exposed the procedural misconduct**, proving that the **initial dismissal was arbitrary and retaliatory** (Appendices D-2, F-1).
- **February 11, 2025**: ICA **dismissed Plaintiff's final appeal (Case No. 25A-EX-67)**, permanently closing **state-level relief channels** and ensuring continued **economic suppression** (Appendix D-5, D-6).

147.     **These actions were not isolated** but **part of a systematic effort** to retaliate against Plaintiff **for asserting their legal rights**.

---

**DWD's Use of Economic Hardship to Suppress Plaintiff's Rights**

148.     Defendants' **coordinated efforts deliberately manufactured economic hardship** to suppress Plaintiff's ability to **continue legal challenges and seek rightful benefits**.

149.     As a **direct result of Defendants' retaliatory actions**:

- Plaintiff **was denied unemployment benefits for over 40 weeks**, despite ALJ rulings in Plaintiff's favor.
- DWD **knowingly withheld benefits** while Plaintiff was experiencing **financial hardship**, forcing Plaintiff into **rent delinquency and credit dependency**.
- DWD **imposed baseless reemployment class requirements** on **October 7, 2024, retroactively enforcing compliance measures that were never disclosed prior** (Appendix C-2).
- ICA's **refusal to grant in forma pauperis status forced Plaintiff into an impossible financial position**, ensuring that **Plaintiff could not afford filing fees** to challenge the suppression of benefits (Appendix B-7).

---

**Preemptive Defense Against Counterarguments**

150.     **Defendants' Likely Argument: "The determinations were part of routine eligibility reviews."**

- **Counter**: The issuance of these determinations **cannot be explained as standard procedure** because:

- o **DWD issued these determinations after benefits had already been suspended until May 2025** under **ALJ Blakely's ruling,** proving that these denials were **manufactured solely to retaliate** against Plaintiff (Appendix E-2).
- o **No other similarly situated claimant** experienced **retroactive eligibility reviews** after ALJ rulings confirming benefit entitlement.
- o **DWD's determinations were issued in direct response to Plaintiff's legal challenges,** linking them to **economic suppression rather than legitimate administrative review.**

151.    **Defendants' Likely Argument: "The denial of in forma pauperis status was a standard judicial decision."**

- **Counter**: ICA's **reinstatement of Case No. 25A-EX-64 on January 27, 2025,** after initially **dismissing it on January 22, 2025,** proves **bad faith.** This was a deliberate attempt to **suppress Plaintiff's claims through economic barriers** (Appendix D-2, F-1).

152.    **Defendants' Likely Argument: "Plaintiff had other legal remedies available."**

- **Counter: Defendants systematically obstructed all available legal remedies** (e.g., wrongful dismissals, procedural fragmentation, fraudulent denials), ensuring that **no viable administrative path remained.**

## Violation of Equivalent State Laws

153.    In addition to violating **12 U.S.C. § 5567,** Defendants' **retaliatory economic suppression** also violates **Indiana state law,** including:

- **Indiana Constitution, Article 1, Section 12 (Right to Access Justice):** ICA's **denial of in forma pauperis status** imposed an **unconstitutional economic barrier** to judicial relief.
- **Indiana Code § 22-4-14-3 (Timely Payment of Benefits):** DWD's **refusal to release benefits despite final ALJ rulings** violates state law mandating **prompt benefit payment.**
- **Indiana Code § 22-5-3-3 (Retaliation Prohibition):** DWD's **issuance of fraudulent determinations to punish Plaintiff for legal challenges** violates **state protections against retaliatory economic actions.**

## Conclusion

154.    Defendants **engaged in a coordinated effort** to **suppress Plaintiff's legal and economic rights, imposing financial hardship and procedural barriers as retaliation.**

155.    Defendants' pattern of **economic suppression and procedural obstruction** falls squarely within the **scope of prohibited retaliation under 12 U.S.C. § 5567.**

---

## COUNT VII – 26 U.S.C. § 3304(a)(5) (Violation of Federal Unemployment Law)

**Legal Standard**

156.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

157.    Under **26 U.S.C. § 3304(a)(5)**, states must comply with federal unemployment compensation standards to qualify for **Federal Unemployment Tax Act (FUTA)** funding. The statute mandates that state agencies administer unemployment benefits fairly and expeditiously, ensuring that no unjust procedural barriers or arbitrary disqualifications deprive claimants of lawfully owed benefits.

158.    In **California Dept. of Human Resources Dev. v. Java, 402 U.S. 121 (1971)**, the U.S. Supreme Court held that delays in processing unemployment benefits violate federal law when they create financial hardships and undermine the claimant's ability to sustain themselves.

159.    State actions that contradict federal unemployment law, including wrongful benefit denials, fabricated procedural barriers, and excessive delays, constitute violations of § 3304(a)(5) and jeopardize the state's federal funding.

**Application to Defendants' Conduct**

160.    The **Indiana Department of Workforce Development (DWD)**, the **Review Board**, and the **Indiana Court of Appeals (ICA)**, acting under color of state law, engaged in unlawful procedural obstruction and economic retaliation against Plaintiff by failing to comply with federally mandated unemployment standards.

161.    **DWD Failed to Process Lawful Unemployment Benefits in Violation of Federal Standards.**

- ALJ Botkin ruled on **September 4, 2024** (Appendix A-1) that Plaintiff was **wrongfully terminated and eligible for benefits**.
- ALJ Murphy reaffirmed this ruling on **November 8, 2024** (Appendix A-2), confirming Plaintiff's entitlement.
- The Review Board denied **DWD's appeal on November 22, 2024** (Appendix A-3), finalizing the administrative decision.
- **Despite these rulings, DWD continued to delay benefits and ignored federal unemployment mandates.**

162.    **DWD Manipulated Procedures to Justify Nonpayment and Violated § 3304(a)(5).**

- **On December 14, 2024,** DWD issued the first of **seven fraudulent determinations** during an already suspended benefits period (Appendix E-2).
- **Between December 2024 and January 2025,** DWD imposed post-hoc reemployment requirements, including a **retroactive job search mandate (October 7, 2024 call, Appendix C-2)** to create an artificial basis for disqualification.
- **On January 31, 2025,** DWD issued **three additional baseless determinations**, further delaying lawful benefits (Appendix E-2).

163.    **DWD's Conduct Violates Federal Funding Requirements and Endangers Indiana's Unemployment Insurance Program.**

- The state's refusal to comply with federal unemployment laws **jeopardizes its eligibility for FUTA funding.**
- DWD's pattern of wrongful denials, artificial procedural hurdles, and retaliatory actions **contradicts federal unemployment compensation requirements**.

**Preemptive Defense Against State Counterarguments**

164.    **Defendants' Likely Argument:** "The state has discretion to impose reasonable eligibility requirements."

- **Counter:** Federal law limits state discretion when procedural barriers violate § 3304(a)(5). DWD's fabricated delays and post-hoc justifications were not "reasonable"— they were retaliatory.

165.    **Defendants' Likely Argument:** "Plaintiff's benefits were reviewed according to state law."

- **Counter: State laws cannot override federal unemployment protections**. DWD's continued refusal to process benefits violated binding ALJ rulings, rendering their actions unlawful under federal unemployment law.

166.    **Defendants' Likely Argument:** "The procedural delays were due to administrative backlog."

- **Counter:** DWD manufactured artificial barriers **after Plaintiff's benefits were already approved**. The intentional issuance of baseless determinations in retaliation for legal action demonstrates **willful misconduct, not administrative inefficiency**.

167.    **Equitable Estoppel:** Defendants knowingly and intentionally violated federal law but continued to impose procedural obstacles, preventing Plaintiff from accessing benefits. **They cannot now claim administrative discretion as a defense when their own actions violated federal unemployment law.**

**Violation of Equivalent State Laws**

168.    In addition to violating **26 U.S.C. § 3304(a)(5)**, Defendants' actions also **violate Indiana state law**, including:

- **Indiana Code § 22-4-14-3 (Timely Payment of Benefits):** Mandates that unemployment benefits be paid promptly following a favorable ruling. **DWD's refusal to issue benefits despite final ALJ decisions is a clear statutory violation.**
- **Indiana Code § 22-5-3-3 (Retaliation Prohibition):** Prohibits state agencies from retaliating against individuals asserting their legal rights. **DWD's issuance of seven fraudulent determinations after Plaintiff's Writ of Mandamus filing constitutes unlawful retaliation.**
- **Indiana Constitution, Article 1, Section 12 (Right to Access Justice):** ICA's refusal to grant **in forma pauperis** status imposed an unconstitutional economic barrier to judicial relief.

**Summary of Defendants' Unlawful Conduct**

169.    **DWD's Procedural Violations:**

- Ignored final ALJ rulings confirming Plaintiff's eligibility. (Appendix A1, A-2, A-3)
- Fabricated new procedural requirements post-ruling to justify nonpayment. (Appendix B-3, C-1, C-2)
- Issued **seven baseless determinations** to obstruct Plaintiff's access to benefits (Appendix C-3, C-5, E-2).

170.    **ICA's Judicial Suppression & Retaliatory Conduct:**

- **Fragmented Plaintiff's appeal** into five separate cases on **January 10, 2025,** obstructing judicial review (Appendix C-4, E-1).
- **Falsely dismissed Case No. 25A-EX-64 with prejudice** on **January 22, 2025,** only to reinstate it after Plaintiff filed a complaint (Appendices B-5, D-1).
- **Denied Plaintiff's in forma pauperis motion** despite financial hardship (Appendix B-7, D-3).

171.    **Defendants Conspired to Violate Federal Unemployment Law & Block Relief:**

- DWD, the Review Board, and ICA engaged in a pattern of procedural sabotage, violating **26 U.S.C. § 3304(a)(5)** and **state unemployment laws**.
- These actions created financial hardship, procedural uncertainty, and deprived Plaintiff of federally protected unemployment benefits.

---

**RELIEF REQUESTED**

Plaintiff seeks the following relief to redress the financial, emotional, and procedural harm suffered due to Defendants' **deliberate misconduct, retaliation, and due process violations**. This relief is supported by **the actual financial losses incurred due to the wrongful delay and denial of unemployment benefits**, the **unconstitutional financial barriers imposed by Defendants**, and the **economic suppression Plaintiff suffered as a direct result of Defendants' actions**.

## A. DECLARATORY JUDGMENT

1. A judicial declaration that Defendants' actions **violated Plaintiff's due process, equal protection, and statutory rights** under both federal and Indiana law, including but not limited to:

   - **42 U.S.C. § 1981 & § 1982** (economic discrimination).
   - **42 U.S.C. § 1983** (deprivation of rights under color of state law).
   - **42 U.S.C. § 1985** (conspiracy to interfere with Plaintiff's rights).
   - **42 U.S.C. § 1986** (neglect to prevent civil rights violations).
   - **12 U.S.C. § 5567** (retaliation for asserting economic rights).
   - **26 U.S.C. § 3304(a)(5)** (federal unemployment compliance violations).
   - **Indiana Constitution, Article 1, Sections 12 & 23**
   - **Indiana Code §§ 22-4-14-3, 22-4-15-1, 22-5-3-3, 34-13-3-8**

2. A judicial declaration that **DWD's issuance of seven additional fraudulent determinations (December 14, 2024 – January 25, 2025)** despite suspending Plaintiff's benefits until May 2025 constitutes:

   - **Bad faith, abuse of discretion, and economic retaliation**.
   - **A willful attempt to obstruct Plaintiff's ability to exercise legal rights**.
   - **A violation of federal unemployment standards under 26 U.S.C. § 3304(a)(5)**.

## B. INJUNCTIVE RELIEF

3. A **permanent injunction** barring **DWD from issuing eligibility determinations** that **contradict final ALJ rulings without a clear legal basis supported by evidence** and subject to **independent judicial review**.
4. An order requiring that:

   - **DWD shall be prohibited** from **retroactively imposing new eligibility requirements** after ALJ rulings in favor of a claimant.
   - Any adverse eligibility determination **contradicting an ALJ ruling must include clear legal justification** and be subject to **independent judicial review**.

- DWD and ICA shall **implement a claimant protection program** to **ensure procedural fairness** and **transparency** in benefit eligibility decisions.
- **A court-supervised compliance mechanism** requiring DWD and ICA to **submit quarterly reports** on unemployment claim processing, including:
  - **Metrics on timeliness** of determinations and benefit disbursements.
  - **Procedural safeguards** to prevent improper denials and procedural fragmentation.
  - **Review of any claimant complaints** alleging retaliatory determinations.
- A court order **prohibiting ICA and the Review Board** from dismissing unemployment appeals **without written, detailed legal justification** explaining the **basis for dismissal, the evidence considered, and the applicable legal standards.**

---

## C. COMPENSATORY DAMAGES

1. **Unpaid Unemployment Benefits**
   - Plaintiff was **wrongfully denied benefits** from **May 2024 – February 2025 (40 weeks).**
   - Plaintiff's **Weekly Benefit Amount (WBA)** was **$111.**
   - **Total benefits Plaintiff was entitled to receive:**
     - **$111 × 40 weeks = $4,440.**
   - **Total benefits actually received** as of **February 20, 2025:**
     - **$1,332.**
   - **Unpaid Benefits Owed:**
     - **$4,440 - $1,332 = $3,108.**
2. **Economic Loss from Benefit Denial**
   - Plaintiff suffered **significant financial harm** due to Defendants' deliberate suppression of unemployment benefits.
   - As a direct result of **Defendants' unlawful actions**, Plaintiff:
     - **Was forced into financial insecurity**, accumulating significant debt.
     - **Fell behind on rent and utilities**, leading to **economic hardship.**
     - **Was unable to seek new employment** due to lack of transportation and **financial instability.**
   - **Requested compensation: $100,000.**
3. **Emotional & Psychological Distress**
   - Plaintiff endured **severe financial anxiety, mental distress, and reputational harm** due to:
     - **Retaliatory misconduct**, including fraudulent determinations issued between **December 14, 2024, and January 25, 2025 (Appendix E-2).**
     - **Judicial bias and procedural sabotage by ICA**, including wrongful appeal dismissals, denial of in forma pauperis relief (**Appendix B-5**), and economic suppression.
     - **Continuous delays, administrative deception, and gaslighting tactics** employed to prevent Plaintiff from accessing benefits.
   - **Requested compensation: $250,000.**

4. **Additional Costs & Litigation Expenses**
   - o Plaintiff **incurred substantial legal, administrative, and transportation costs**, including but not limited to:
     - **Filing fees** for multiple appeals and lawsuits.
     - **Postage and document preparation expenses** for writs, complaints, affidavits, and evidentiary submissions.
     - **Transportation expenses** for hearings and administrative proceedings.
   - o **Requested reimbursement: $3,500.**

## D. PUNITIVE DAMAGES

5. Punitive damages are warranted due to Defendants' **egregious, willful, and malicious misconduct**, which included:

- **Knowingly ignoring ALJ rulings** and obstructing benefit payments.
- **Engaging in coordinated efforts to issue fraudulent determinations.**
- **Retaliating against Plaintiff by manufacturing procedural barriers** to judicial review.
- **Suppressing access to justice** by **denying in forma pauperis relief** despite clear financial hardship (**Appendix B-7**).

6. **Requested punitive damages: $5,000,000**, to:

- **Deter further misconduct and systemic abuse** by Defendants.
- **Encourage federal oversight and reform** in Indiana's unemployment claims process.

## E. ATTORNEYS' FEES & COSTS

7. Plaintiff seeks **recovery of attorneys' fees and litigation costs** under **42 U.S.C. § 1988** and **Ind. Code § 34-24-1-1**, including:

- **Legal research, drafting, and litigation preparation time.**
- **Court filing fees and administrative costs.**
- **Costs associated with appeal submissions, expert consultations, and legal fees.**
- **Requested total attorneys' fees and legal costs: $100,000.**

## F. TOTAL DAMAGES SOUGHT

| Category | Amount |
|---|---|
| **Unpaid Unemployment Benefits** | **$3,108** |
| **Economic Loss (Hardship Damages)** | **$100,000** |

| Category | Amount |
|---|---|
| Emotional Distress | $250,000 |
| Administrative & Litigation Costs | $3,500 |
| Punitive Damages | $5,000,000 |
| Attorneys' Fees & Legal Costs | $100,000 |
| Total Requested Damages | $5,456,608 |

## G. FINAL RELIEF REQUEST

**WHEREFORE, Plaintiff respectfully requests that this Court:**

- **Retain continuing jurisdiction** to ensure full compliance with injunctive relief.
- **Declare that Defendants' actions violated** Plaintiff's statutory and constitutional rights.
- **Compel immediate disbursement** of unpaid unemployment benefits.
- **Award compensatory and punitive damages** totaling **$5,456,608**.
- **Grant attorneys' fees and litigation costs** totaling **$100,000**.
- **Grant such further relief as this Court deems just and necessary**.

## CONCLUSION & PUBLIC POLICY

Defendants' egregious and deliberate violations of Plaintiff's due process, statutory rights, and constitutional protections illustrate a systemic failure within Indiana's unemployment benefits system. The **Indiana Department of Workforce Development (DWD), the Review Board, and the Indiana Court of Appeals (ICA)** have not only obstructed Plaintiff's rights but have also set a dangerous precedent for other claimants who depend on unemployment benefits for economic stability.

By **delaying payments, issuing contradictory rulings, engaging in procedural manipulation, and retaliating against those who assert their rights**, Defendants have created an unlawful framework of administrative abuse that disproportionately harms financially vulnerable individuals. These actions **undermine the fundamental principles of justice and fairness, stripping claimants of the very protections federal law mandates**.

Despite multiple **favorable rulings from ALJs confirming Plaintiff's eligibility for benefits**, Defendants **refused to comply, issued retaliatory determinations, and manipulated judicial procedures** to obstruct Plaintiff's access to benefits. This case provides clear evidence of how state agencies can collude to deny benefits, suppress due process, and weaponize administrative procedures against those asserting their economic rights.

If left unchecked, **Defendants' conduct will continue to deprive eligible individuals of their rightful benefits, erode public trust in the legal system, and embolden government agencies to violate federal and constitutional protections without accountability**. The need for judicial

intervention is critical—not just to redress Plaintiff's harm, but to halt an **ongoing pattern of misconduct that affects countless other claimants**.

Furthermore, **DWD's refusal to comply with federal unemployment laws, particularly 26 U.S.C. § 3304(a)(5), jeopardizes Indiana's eligibility for federal funding under the Federal Unemployment Tax Act (FUTA)**. The persistence of these violations highlights a broader **public policy concern**: if state agencies can **arbitrarily withhold unemployment benefits and obstruct access to judicial review, economically disadvantaged individuals will continue to suffer without recourse**.

This Court has a duty to **uphold the rule of law, enforce statutory protections, and prevent further systemic abuse** by these agencies. A ruling in Plaintiff's favor will not only correct these injustices but will serve as a **precedent to ensure other claimants are not subjected to similar deprivations**.

Federal oversight and judicial intervention are necessary to restore public confidence in the administration of unemployment benefits and **prevent further economic retaliation against individuals who lawfully assert their rights**.

Respectfully submitted,

Sign: *Jordan C. Smith / Agent*

**Jordan C. Smith/ Agent**
JORDAN TALLEY-SMITH/ Principal
**(WITHOUT RECOURSE) (WITHOUT PREJUDICE)**
c/o 4436 Torrence Ave.
Hammond, IN. 46327
Phone #: (708) 639-0828
Email: talleysmithj@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on 2/___/2025, a copy of this **Federal Complaint for Systemic Due Process Violations, Appendix and Addendum** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

- **Indiana Department of Workforce Development**
  10 North Senate Avenue
  Indianapolis, Indiana 46204
- **Review Board of the Indiana Department of Workforce Development**
  10 North Senate Avenue
  Indianapolis, Indiana 46204
- **Indiana Court of Appeals**
  115 West Washington St.
  Indianapolis, Indiana 46204

Sign: *Jordan C. Smith / Agent*

**Jordan C. Smith/ Agent**
JORDAN TALLEY-SMITH/ Principal
**(WITHOUT RECOURSE) (WITHOUT PREJUDICE)**

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JORDAN TALLEY-SMITH

## DEFENDANTS

Indiana Department of Workforce Development, et al.

**(b)** County of Residence of First Listed Plaintiff **Lake**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Lake**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** — [ ] 310 Airplane / [ ] 315 Airplane Product Liability / [ ] 320 Assault, Libel & Slander / [ ] 330 Federal Employers' Liability / [ ] 340 Marine / [ ] 345 Marine Product Liability / [ ] 350 Motor Vehicle / [ ] 355 Motor Vehicle Product Liability / [ ] 360 Other Personal Injury / [ ] 362 Personal Injury - Medical Malpractice | [ ] 625 Drug Related Seizure of Property 21 USC 881 / [ ] 690 Other | [ ] 422 Appeal 28 USC 158 / [ ] 423 Withdrawal 28 USC 157 | [ ] 375 False Claims Act / [ ] 376 Qui Tam (31 USC 3729(a)) / [ ] 400 State Reapportionment |
| [ ] 120 Marine | **PERSONAL INJURY** — [ ] 365 Personal Injury - Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability / [ ] 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** [ ] 820 Copyrights / [ ] 830 Patent / [ ] 835 Patent - Abbreviated New Drug Application / [ ] 840 Trademark / [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | | | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | | | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | | | [ ] 460 Deportation |
| [ ] 151 Medicare Act | | | | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | | **PERSONAL PROPERTY** [ ] 370 Other Fraud / [ ] 371 Truth in Lending / [ ] 380 Other Personal Property Damage / [ ] 385 Property Damage Product Liability | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | | **LABOR** [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** [ ] 861 HIA (1395ff) / [ ] 862 Black Lung (923) / [ ] 863 DIWC/DIWW (405(g)) / [ ] 864 SSID Title XVI / [ ] 865 RSI (405(g)) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 160 Stockholders' Suits | | [ ] 720 Labor/Management Relations | | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | | [ ] 740 Railway Labor Act | | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | [ ] 751 Family and Medical Leave Act | | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | [ ] 790 Other Labor Litigation | | [ ] 891 Agricultural Acts |
| | | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** [ ] 870 Taxes (U.S. Plaintiff or Defendant) / [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 893 Environmental Matters |
| **REAL PROPERTY** [ ] 210 Land Condemnation / [ ] 220 Foreclosure / [ ] 230 Rent Lease & Ejectment / [ ] 240 Torts to Land / [ ] 245 Tort Product Liability / [ ] 290 All Other Real Property | **CIVIL RIGHTS** [ ] 440 Other Civil Rights / [ ] 441 Voting / [x] 442 Employment / [ ] 443 Housing/ Accommodations / [ ] 445 Amer. w/Disabilities - Employment / [ ] 446 Amer. w/Disabilities - Other / [ ] 448 Education | **PRISONER PETITIONS** *Habeas Corpus:* [ ] 463 Alien Detainee / [ ] 510 Motions to Vacate Sentence / [ ] 530 General / [ ] 535 Death Penalty *Other:* [ ] 540 Mandamus & Other / [ ] 550 Civil Rights / [ ] 555 Prison Condition / [ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** [ ] 462 Naturalization Application / [ ] 465 Other Immigration Actions | [ ] 895 Freedom of Information Act / [ ] 896 Arbitration / [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision / [ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 12 U.S.C. § 5567, 26 U.S.C. § 3304(a)(5)

Brief description of cause:
Violations of Due Process Rights Under the 14th Amendment

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 5,456,608

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 2/24/2025

SIGNATURE OF ATTORNEY OF RECORD
*Jordan C. Smith / Agent*

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____